IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                          }
    JUSTIN DAVIS,           }           CASE NUMBER 11-43159-JJR
                                }           CHAPTER 13
                                }
    Debtor.                 }

## OPINION AND ORDER

### (NOT FOR PUBLICATION)

The Debtor has appealed from the April 17, 2012 Order of Dismissal (Doc. 42), and this chapter 13 case is now before the Court on the Debtor's Motion to Continue Automatic Stay Pending Appeal (Doc. 53). The Debtor seeks to maintain the automatic stay protections of Section 362 of the Code[1] while his appeal is pending, and has offered to continue plan payments to the trustee and adequate protection payments to his one secured creditor. For the reasons that follow, the Debtor's Motion will be DENIED.

### Factual Background[2]

Despite four confirmation hearings conducted over the course of three months, and the Court's encouragement from the first setting that Debtor's counsel respond to the Court's concerns about this case (other than with conjecture), the Court had no choice but to base its Order of Dismissal on information extracted solely from the Debtor's proposed plan, schedules and statement of financial affairs. If the Court had confirmed the plan as proposed by the

---

[1] Unless otherwise indicated, references to the "Bankruptcy Code" or "Code" are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and references to a "Bankruptcy Rule" or "Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] In setting out the factual background, the Court has made use of the electronic court recording for each of the four confirmation hearings, and has attempted to set forth the facts as they would be shown had a transcript of the proceedings been prepared.

1

Debtor, it would have done so based on speculation that was never substantiated by the Debtor or other credible evidence.

The Debtor filed this case on December 20, 2011. He is a single young man with no dependents and below-median income. His schedules reflected only four unsecured debts that totaled $878.89; three of those claims were incurred within five months before this case was filed.[3] The Debtor owes Columbia House DVD Club $75.75; Pegasus Emergency Group $30.00 for a medical bill; Regions Bank $503.14 for overdrafts; and Security Finance $270.00 for a loan. The Debtor's only secured creditor is Santander, which holds a purchase-money security interest in a 2007 Chevy Malibu that the Debtor bought in April 2010. The Debtor's initial plan proposed a 60-month commitment period, and would have paid nothing to unsecured creditors; however, it proposed to pay Santander $12,860.44 plus 5% interest for the Malibu.

The Debtor had been employed at his job for two years when the case was filed, and brought home $1,002.26 per month. On February 28, 2012, the Debtor amended schedules I and J to reflect a new job and take-home pay of $1,138.03 per month.

On February 14, 2012, the Court conducted the first of four confirmation hearings. The Debtor was not present. The Court expressed its concern to Debtor's counsel that, in light of the recently incurred unsecured debts and the proposal to pay nothing to unsecured creditors, the Court was having difficulty finding the plan was proposed in good faith. And more significantly, in light of the Debtor's income being below median, the Court could find no "cause" for allowing the term of the plan – proposed for 60 months – to extend beyond the 36-month limit anticipated by Code § 1322(d) for most below-median debtors. The Court informed counsel that

---

[3] Unsecured claims totaling $743.14 were filed before the claims bar date.

2

Case 11-43159-JJR13    Doc 65    Filed 06/07/12    Entered 06/07/12 12:15:26    Desc Main
Document    Page 2 of 14

based on the limited record before it, nothing short of a 36-month plan paying 100% to unsecured creditors could be confirmed.[4]

At the second confirmation hearing on March 13, 2012, the Debtor again did not appear. The Court reiterated its concerns that the Debtor had purchased a car he simply could not afford when he bought it, and having made an unwise financial decision now wanted to use bankruptcy to impose a 5-year refinancing on the secured creditor.[5] The Court made it clear that it needed an explanation of exactly what had happened between the time the Debtor purchased the Malibu and when he filed bankruptcy. By the second confirmation hearing, the plan had been amended to pay 100% of unsecured claims, but still had a 60-month term. Debtor's counsel acknowledged that the Court needed more information, and the Court pointed out its concern that "cause" had not been established for a 60-month plan. The Court reminded Counsel that the majority of chapter 13 cases fail and are dismissed without discharge – no financial fresh start – and cautioned against the Debtor staying in a case for two years longer than the statutorily

---

[4] Counsel speculated that perhaps a reason for the Debtor seeking bankruptcy relief was due to medical expenses. Recall, however, that the only medical bill shown on the schedules was for $30.

[5] Santander's proof of claim stated that the amount of arrearage when the case was filed was $3,025.60. The Retail Installment Contract attached to Santander's proof of claim provided for 60 monthly installments of $366.35 each, for a total of $21,981.00. Thus, it appears that when the case was filed, the Debtor was approximately 8 months behind on his payments.
The original schedule J calculated the Debtor's net monthly income at $314.26, which was $52.09 less than his contract monthly car payment. Moreover, schedule J raises at least two unanswered questions: The Debtor pays no rent or mortgage payment, yet he pays utilities of $145.00 per month; and he allocates only $175 monthly for food – $5.76 per day – or approximately the cost of one meal per day at a fast-food restaurant. Is the Debtor's budget shown on schedule J accurate, or did he "back into" his expenses to demonstrate sufficient net income to cover proposed plan payments? All other issues aside, feasibility may be an insurmountable obstacle to confirmation. § 1325(a)(6).

3

preferred 36-months.[6] The Court made it clear that the Debtor's testimony was needed and urged that the Debtor come to court at the next setting.[7]

---

[6] Objectively, one might inquire why the Court will not confirm a plan that, IF fully paid, will pay all the Debtor's unsecured creditors (at least those who bothered to file claims) and his automobile loan?  Some statistics – perhaps anecdotal, but worth mentioning – might clarify why the Court was and remains concerned about the Debtor's proposed 5-year plan.  The Court's regularly scheduled chapter 13 docket was held on June 5, 2012, the same day as the hearing on the Debtor's motion to continue the stay pending appeal.  On that docket were 47 newly filed chapter 13 cases with plans set for confirmation.  Of the debtors in those 47 new cases, 32 had previously filed bankruptcy cases; many had filed more than one previous case – 68% were repeat filers.  On this same docket were 47 active cases in which the trustee had filed motions to dismiss due to the failure of the debtors to make their plan payments.  The number of new cases being the same as the number of those subject to dismissal was a coincidence, but the disturbing number of serial filers and high number of defaulting active cases is not that far out of line with what this Court sees on a regular basis.  Regardless, these statistics highlight a point worth making.  Jumping into the chapter 13 cauldron, especially for the first time, should not be a casual decision.  Staying in chapter 13 becomes a way of life for many debtors.  Studies have shown that, at best, only one out of three chapter 13 debtors complete their plans and receive a discharge.  *See* Jean Braucher, *A Fresh Start for Personal Bankruptcy Reform: The Need for Simplification and a Single Portal*, 23, n. 9, Arizona Legal Studies, Discussion Paper No. 06-22 (2006) (http://ssrn.com/abstract=912561).  Chapter 13 debtors in the Eastern Division of the Northern District of Alabama do no better.  The Supreme Court and Eleventh Circuit have found that discharge – a financial fresh start – is a critical function of bankruptcy: "To begin with, the [Supreme] Court provided guidance by setting forth the three *critical* in rem functions of bankruptcy courts: '[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debt.'" *State of Florida v. Diaz (In re Diaz)*, 647 F.3d 1073, 1084 (11th Cir. 2011) (quoting *Central Virginia Community College v. Katz*, 546 U.S. 356, 363-64 (2006) (emphasis added)).  With such a high failure rate, it is not surprising that Congress limited below-medium income debtors – those who often experience one financial crisis after the other – to a 36-month commitment, except when a court finds sufficient cause to allow a longer term.  Whether to allow a longer term is often a subjective decision, but not one this Court makes without due consideration of the totality of circumstances.

This judge has witnessed the untimely dismissal of hundreds, if not thousands of under-median income debtors' cases whose plans were confirmed for 5 years without demonstrating cause existed for a term beyond the three years anticipated by Code §1322(d).  Those cases are dismissed without a discharge, and in many instances the debtors immediately file another chapter 13 case, followed by another dismissal, and they file yet another case, until the same sorry scenario is repeated as many as 10 or more times.  The serial filings often span ten or more years, with a discharge never being achieved.  These non-discharge cases benefit no one except the lawyers who collect their fees for each successive case, the trustee who collects a

The third time was not the charm. Instead of appearing at the third confirmation hearing on April 4, 2012, Debtor was conspicuously absent. Counsel put forth, for the first time, a potential answer to the "what has changed since buying the car" conundrum. Counsel stated that the Debtor had been taking his car payments to the dealership, and instead of sending those payments on to Santander, a salesman had been pocketing the money. Counsel offered nothing by way of evidence to support this assertion. It appeared to the Court that this scenario, if true, would provide a basis for damages against the dealership outside of bankruptcy that might solve all of the Debtor's financial problems, and the Chapter 13 Trustee expressed her belief that the potential lawsuit could pay off the plan in even less than 36 months. The claim against the dealership was far from being "money in the bank" as disclosed by Counsel's admission that "they're still kind of investigating exactly" what happened. The Court continued the confirmation hearing for the third time to give the Debtor yet another opportunity to establish

---

commission, and the court which is paid a filing fee for each case. This Judge will no longer confirm a plan for a below median-income debtor unless facts, not mere speculation, are shown that support cause for an extended term. Often this Court will find cause if additional time is needed to cure a large arrearage on a home mortgage; saving one's home is good cause. More time may be needed to pay a domestic support obligation, thereby keeping the debtor out of jail; or to pay priority taxes that cannot be discharged unless paid in full. But attempting to pay for a car that a debtor never should have purchased in the first place is not, in the absence of some other circumstance, sufficient to establish good cause or good faith. Chapter 13 allows an honest but unfortunate debtor to adjust his debts and ultimately receive a financial fresh start, not perpetuate his bad credit decisions.

[7] From what the Court could determine, the debt for the Malibu was more than the Debtor could afford when he bought the car, which was certainly not sufficient "cause" to extend the plan beyond 36 months. The Court expressed its concern that the Debtor – in his first, and hopefully last bankruptcy case – was proposing to remain in chapter 13 for five years simply to pay for a car he could not afford at the time he bought it, and not because some intervening event had changed his finances for the worse after purchasing the car. The Court warned it would not allow the Debtor to enter into a 5-year commitment based on nothing more than counsel's urging that the Debtor wanted to keep his car.

5

"cause" for a 60-month plan, to show good faith, and examine the merits of alleged claim against the car dealership. The Court, again, said the plan needed to pay all claims in 36 months (an impossibility according to Counsel), or provide for the surrender of the car, and suggested that the Debtor investigate reaffirmation possibilities with Santander for the Malibu if the case were converted to one under chapter 7.

In response, the Debtor continued his perfect pattern of absence at the fourth and final confirmation setting.[8] In a two-sentence presentation in support of confirmation, counsel informed the Court that the Debtor was determined to keep the Malibu, and that that was all counsel could do. The plan still proposed a 60-month commitment period, and so, as forewarned, the case was dismissed *sua sponte*. The Court specifically ruled that the below-median income Debtor had not carried his burden to establish "cause" for extending the plan beyond 36 months. More to the point, the Court could not find that the Debtor's buying a car he could not afford when purchased was sufficient "cause" under the standard of Code § 1322(d). If other "cause" existed, it could not be discerned despite the Court's repeated attempts to assimilate the totality of the Debtor's schedules and statements filed in the case and despite the repeated opportunities for the Debtor to explain to the Court what the Court might be missing— opportunities that were repeatedly ignored. With no help from the Debtor whatsoever in terms of

---

[8] A report of PACER system docket entries shows that during calendar year 2011, this Court confirmed 1,527 chapter 13 plans. That figure does not reflect the number of cases that were set for confirmation but not confirmed. Each of those plans was set for a hearing on confirmation at least once, and many if not most of them, more than once. This Court reviews each plan every time the case is up for confirmation, and takes seriously its duty to apply the Code's requirements for confirmation. Admittedly, most plans can be confirmed without the debtor's attendance at the confirmation hearing. However, if a debtor is serious about his chapter 13 commitment, it is not unreasonable to expect him to appear, at least once, after the Court expresses its concerns with a proposed plan and has questions that cannot be adequately answered by counsel.

6

an explanation under oath—not even an affidavit—the Court simply could not fabricate "cause" out of the patchwork of schedules, statements, and speculation on the record before it. In addition, Counsel never, during any of the four hearings, offered any explanation as to why the Debtor had failed to appear.

### The Standard of Rule 8005

The Debtor's Motion to Continue Automatic Stay is, in essence, a motion to stay the effect of the Order of Dismissal pending appeal. Stays pending appeal of a bankruptcy court's judgment or order in a contested matter are governed by Rule 8005 of the Federal Rules of Bankruptcy Procedure. In relevant part, that Rule provides that "the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code, or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Rule 8005.

The legal standard for granting or denying a stay pending appeal is the same as for granting a preliminary injunction.[9] The four factors that should be considered in determining whether a stay should be granted are:

1. Whether the movant has shown a likelihood of success on the merits;
2. Whether the movant has made a showing of irreparable injury if the stay is not granted;
3. Whether granting the stay would substantially harm the other parties; and
4. Whether granting the stay would serve the public interest.[10]

In assessing whether the Debtor has shown a likelihood of success on the merits, the inquiry begins by looking at the assignments of error in the Statement of Issues on Appeal (Doc.

---

[9] *In re Forty–Eight Insulations, Inc.,* 115 F.3d 1294 (7th Cir.1997).

[10] *In re Gulf States Steel, Inc.,* 285 B.R. 739, 741 (Bankr.N.D.Ala.2002).

7

59), which read as follows:

1. Whether the Court's order dismissing this Chapter 13 Bankruptcy, suasponte [sic], is contrary to the provisions of Title 11 of the Bankruptcy [sic] Code.

2. Whether the Court's order dismissing this case is contrary to the facts.

3. Whether a Chapter 13 Debtor may file a 60 month case absent bad faith if he commits all of his disposable income.

Issue number 1 appears to reflect the Debtor's contention that the dismissal of the case, *sua sponte*, was in violation of the Bankruptcy Code. Issue number 2 appears to assert that the facts did not support the dismissal as a matter of law, or that the Court's fact findings were in error. Issue number 3 conflates and misstates several confirmation requirements, and seems to assert that any 60-month plan filed without bad faith in which the Debtor commits all disposable income must be confirmed.

The Eleventh Circuit has recently summarized the standard for appellate review of a bankruptcy court's rulings, pointing out that legal determinations are reviewed *de novo*, and further explaining that the circuit court standard of review is the same as that employed by the district court:

> We review the findings of fact of the bankruptcy court for clear error. The factual findings of the bankruptcy court are not clearly erroneous unless, in the light of all the evidence, "we are left with the definite and firm conviction that a mistake has been made." "Neither the district court nor this Court is authorized to make independent factual findings; that is the function of the bankruptcy court." We review equitable determinations of the bankruptcy court for abuse of discretion.

*In re TOUSA, Inc.*, ---F.3d---, 2012 WL 1673910, *11 (11th Cir. 2012) (citations omitted). *See also Jim Walter Homes v. Saylors (In re Saylors)*, 869 F.2d 1434, 1438 (11th Cir. 1989) (stating that the bankruptcy court is in the best position to weigh confirmation factors and to assess credibility).

The Debtor's assignments of error turn both the requirements for confirmation, and the Debtor's burden to establish each element required, on their heads, and do not demonstrate a likelihood of success on the merits. This Court is not required to engage in speculation and divination in order to find the "cause" required under § 1322(d), nor to find the "good faith" required under § 1325(a)(3) as to the proposal of the plan and (a)(7) as to the filing of the petition.[11] To the contrary, even in the absence of an objection by a creditor, this Court has an independent obligation to ensure that the Debtor meets his burden as to all requirements for confirmation.[12]

Code § 1322(d)(2) provides that a below-median income debtor may extend the statutorily preferred 36-month commitment period only upon a showing of "cause." As the Eleventh Circuit has explained, "Section 1322(d) delineates the maximum periods of time for a Chapter 13 bankruptcy while § 1325(b)(4) sets out the minimum periods of time for Chapter 13 bankruptcy, with both the minimums and maximums contingent upon the debtor's classification as an above median or below median income debtor." *In re Tennyson*, 611 F.3d 873, 878 (11th

---

[11] This Court agrees with those courts finding that a case not filed "in good faith" is different from finding the case was filed "in bad faith." The Debtors have the burden of proof to establish each element required for confirmation, including establishing that the case was filed in good faith. *See, e.g., In re Lavilla*, 425 B.R. 572 (Bankr. E.D. Cal. 2010) (discussing the distinction between a finding of "bad faith" and a finding of "not in good faith", and also discussing the burden of proof for confirmation).

[12] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 n. 14 (2010) (bankruptcy courts required to address defects in proposed plans even if no creditor raises the issue); *Alabama Dept. Of Economic & Community Affairs v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1228-30 (11th Cir. 2011) (bankruptcy courts have independent obligation to determine if absolute priority rule was violated); *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 828 n. 6 (11th Cir. 2003) (bankruptcy courts have independent obligation to ensure compliance with the Code); *In re Anderson*, 458 B.R. 494, 503 (Bankr. E.D. Wisc. 2011) ("The bankruptcy court cannot confirm a plan that contains provisions contrary to law, no matter how those defects come to its attention.").

Cir. 2010).

Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[13] the "cause" requirement for extending a plan beyond 36 months was found in then-§ 1322(c), which applied to all debtors and read, "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause approves a longer period, but the court may not approve a period that is longer than five years." In explaining the "cause" requirement, and its addition in The Bankruptcy Reform Act of 1978, one court explained:

> Section 1322(c) had no counterpart under chapter XIII of the former Bankruptcy Act. The legislative history explains why Congress limited the length of chapter 13 plan to five years and only for cause.
>
>> [Under chapter XIII of the Act], in certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have made them a way of life for certain debtors. Extensions on plans, new cases and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to indentured servitude; it lasts for an indentifiable [sic] period and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law.
>
> H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078 (footnote omitted).
>
> The Code contains no definition of the "cause" necessary for the extension of a plan to five years. Collier suggests that a debtor's inability to cure a default under section 1322(b)(5) or to pay priority or allowed secured claims in a shorter time should be grounds for approving plans longer than three years. 5 Collier on Bankruptcy ¶ 1322.15 (15th ed. 1986) ("Collier").

*In re Fries*, 68 B.R. 676, 679 (Bankr. E. D. Pa. 1986) (examining legislative history and finding "cause" where debtors needed more than 36 months to pay priority claims, secured claims, and mortgage delinquencies as well as paying 20% to unsecured creditors). *See also Hart v. Bowers*, 2001 WL 34076355 (C.D. Ill. 2001) (affirming as not clearly erroneous the bankruptcy court's

---

[13] Pub. L. 109-8, 119 Stat. 23 § 318 (April 20, 2005).

Case 11-43159-JJR13    Doc 65    Filed 06/07/12    Entered 06/07/12 12:15:26    Desc Main
Document      Page 10 of 14

determination that Debtor failed to establish "cause" to extend case beyond 36 months, where debtor proposed to pay for a car but was paying little unsecured debt and not saving a home or paying priority claims); *and see In re Norris*, 165 B.R. 515 (Bankr. M.D. Fla. 1994) (holding that then-§ 1322(c) "creates a 36-month standard time period for a chapter 13 plan and allows for a longer period only in unusual circumstances" – cause in that case was a large priority tax claim that debtors could not pay in 36 months).

After the passage of BAPCPA, the "cause" requirement to extend a plan beyond 36 months is now applicable only to debtors with below-median income as part of § 1322(d)(2). In contrast to above-median debtors, below-median debtors were not targeted by Congress as part of BAPCPA and are not subject to the five-year commitment now required of above-median debtors who are paying less than 100% of allowed unsecured claims. Code § 1325(b)(4). The legislative history makes this clear:

> Sec. 318. Chapter 13 Plans To Have 5-Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period of up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.

H.R. Rep. 109-31(I), p. 79, 2005 U.S.C.C.A.N. 88, 146 (as quoted in *Tennyson*, 611 F.3d at 879).

If the Debtor could, as a matter of law, establish "cause" to extend the commitment period in the face of the Court's concerns simply by showing that all disposable income was being devoted to the plan, or simply by remaining silent, then confirmation would be a streamlined process indeed and the language of Code § 1322(d)(2) would be entirely superfluous

11

in light of the disposable income requirement already set out in § 1325(b). Not only must the Debtor in this case meet the burden of establishing "cause" for a 60-month plan, he also bears the burden to show that both his case and plan are filed in good faith (as opposed to "absence of bad faith" as asserted in the assignments of error). The Court stated at the first confirmation setting that both "cause" and "good faith" appeared to be lacking under the circumstances as appeared from the petition and schedules, and the Debtor never came forth with any evidence to attempt to convince the Court otherwise. The Court cannot see a likelihood of success in establishing clear error as to its fact findings, or in establishing an error of law in its interpretation of the provisions of §§ 1322 and 1325 as requiring something more than just satisfying the disposable income test when the circumstances of the case raise questions for the Court; the Debtor was given ample opportunities to respond to the Court's questions, and yet he failed to do so.

The second and third factors to be considered under Rule 8005 (possible irreparable injury to the Debtor and likelihood of substantial harm to other parties) also support a denial of the Motion to Continue Automatic Stay. The secured creditor would, more likely than not, be substantially harmed if stayed from exercising its contractual remedies while the Debtor continues to use and depreciate the vehicle during the pendency of the appeal. The Debtor will no doubt continue to drive and depreciate the Malibu while paying the creditor only $128.60 in adequate protection payments monthly. (Doc. 38). The Debtor has not provided proof of insurance, nor has the Debtor shown that the small adequate protection payments – approximately one-third of the contract payments – will adequately compensate for the depreciation of the vehicle's value during the duration of the appeal, which is impossible to ascertain at this point, but based on experience could be a year or longer. Adequate protection payments are by their nature designed to compensate for the risk of depreciation to collateral

12

Case 11-43159-JJR13   Doc 65   Filed 06/07/12   Entered 06/07/12 12:15:26   Desc Main
Document      Page 12 of 14

during the brief window (often less than 2 months) between the petition date and confirmation. Outside of bankruptcy, which is where the matter will remain if the appeal is unsuccessful, the creditor has a contractual right to receive payments of $366.35 per month. (Proof of Claim 3). Maintaining plan payments, $251.53 of which would be Santander's fixed monthly payment if the plan were confirmed, only helps the creditor if the case is reinstated, and is of no benefit to the creditor if the appeal is not successful, while the harm to the creditor in terms of opportunity cost for the loss of use and in terms of depreciation in value would be very real. If the Court's ruling is ultimately affirmed, any plan payments that the trustee accumulates will be refunded to the Debtor less any remaining filing fee and the trustee's commission, and will not go to the creditor. Thus, the protection of offering plan payments during the appeal is illusory. This is particularly true given the absence of any enforcement mechanism should the Debtor default in making adequate protection or plan payments while the appeal is pending.

At the hearing on this Motion to Continue the Stay Pending Appeal, the Debtor, through his counsel (the Debtor again failed to appear in person), argued that there was no evidence of bad faith on his part. The Debtor continues to miss the point. There are two issues here. First, the standard for plan confirmation is not a lack of bad faith, but rather a showing of good faith. In the Court's view, purchasing an automobile that the Debtor could not afford when he purchased it, and simply "refinancing" it through chapter 13 may not necessarily constitute bad faith per se, but it certainly does not prove good faith under the circumstances of this case. Moreover, there was absolutely no evidence offered to support "cause" for exceeding the 36-month maximum term for a plan proposed by a below-median income debtor. The Court does not interpret the Debtor's burden under § 1322(d)(2) to show cause as being satisfied simply by stating the Debtor needs more time to make the payments. The Debtor made no showing that he

13

will be irreparably injured if the stay is not continued, and to the extent such injury might be presumed based on conjecture (i.e. no transportation to work), there was no showing that injury to the Debtor would be greater than injury to the secured creditor. Finally, the Debtor has not shown that the public interest would be impacted in any manner by the granting of the stay.

## Order

For the reasons stated above, it is hereby ORDERED that the Debtor's Motion to Continue Automatic Stay Pending Appeal (Doc. 53) is DENIED. The Clerk is directed to cause this Opinion and Order to be filed with the District Court as part of the record on appeal.

So done and ordered this 7th day of June 2012.

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge